# UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

## EASTERN DISTRICT

Lupe Stratton,

         Plaintiff

v.

Bentley University

         Defendant

Case No.

## COMPLAINT

### I.  INTRODUCTION

1.    The Plaintiff, Lupe Stratton, ("Plaintiff"), by counsel, hereby brings this complaint against the Defendant, Bentley University ("Bentley"), her former employer, and in support thereof, says as follows:

### II. NATURE OF ACTION

2.    This is an action for federal and state discrimination violations, Family Medical Leave Act "FMLA" violations, and other wrongful acts alleged herein, related to Ms. Stratton's employment at Bentley.

### III. PARTIES

3.    Plaintiff is an adult resident of Middlesex County, Massachusetts. All of the material facts stated *infra* occurred in Waltham, Massachusetts.

4.    Bentley is a private non-profit university located in Waltham, Middlesex County, Massachusetts.

5.    At all times material, Bentley employed over 500 employees and was and is an employer within the meaning of Title VII of the Civil Rights Act of 1964 as amended, in that Bentley engages in an industry affecting commerce and has had fifteen (15) or more employees for each working day of each of twenty (20) or more calendar weeks in the current of pending calendar

6.    At all times material, Bentley was and is an "employer" within the meaning of 29 U.S.C. §2611(4), in that Bentley employed more than fifty (50) employees within a seventy-five (75) mile radius for each working day during each of twenty (20) or more calendar work weeks in the current and preceding calendar years.

7.    As used herein, the term "Bentley" or "Defendant" shall include the University, its agents, servants and employees.

## IV. JURISDICTION

8.    Jurisdiction in the federal court exists pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343 because this is a civil rights action arising under the laws of the United States. Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2601e-5(f)(3) grants the Court jurisdiction over claims brought under the subchapter. This action involves violations of, *inter alia*, the FMLA, 29 U.S.C. §§ 2601-2654, the American Disabilities Act ("ADA", 42 U.S.C. §§ 12101-12213), and the American Disabilities Amendment Act ("ADAAA"), and Title VII of the Civil Rights Act of 1964 as amended.

9.  Jurisdiction in the federal court also exists pursuant to 28 U.S.C. § 1367, as the state claims are so closely related to the other federal claims that are within the original jurisdiction that the state claims form part of the same case or controversy..

10. Personal jurisdiction and venue are proper pursuant to 28 U.S.C. § 1391 in the District of Massachusetts since the Plaintiff resides and the Defendant has a place of business in Middlesex County; and the lawful conduct complained of occurred in this District.

## V. EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. The Plaintiff timely filed a complaint with the Massachusetts Commission Against Discrimination ("MCAD"), and MCAD timely dual-filed the Complaint with the Equal Employment Opportunity Commission ("EEOC"). A copy of the Charge of Discrimination is attached hereto as Exhibit 1, and its contents are incorporated as though repeated herein.

12. The Plaintiff timely exhausted the administrative requirements and received a Dismissal and Notice of Rights from the EEOC, dated April 10, 2019, which gave her ninety (90) days to file suit from April 10, 2019. A copy of the EEOC Dismissal and Notice of Rights is attached as Exhibit 2. The Plaintiff's counsel did not receive Exhibit 2 until a copy of the Dismissal and Notice of Rights was emailed to Plaintiff's counsel on July 3, 2019.

## VI. FACTS

13. The Plaintiff worked for Bentley as an executive program coordinator from August 1, 2016, to July 20, 2018. At the beginning of her employment, the Plaintiff was informed that she would work thirty-five (35) hours per week.

14.   The Plaintiff had two direct supervisors while she worked for Bentley. William
      Gribbons ("Gribbons") supervised the Plaintiff for the programming portion of her job;
      William Albert ("Albert") supervised the Plaintiff for the marketing portion.

15.   Beginning in the fall of 2016, the Plaintiff received tasks and directions from both
      Gribbons and Albert that often conflicted. In order to meet these conflicting
      requirements, the Plaintiff often worked in excess of twelve (12) hours per day.
      Gribbons and Albert insisted that because of the demands of her position, the Plaintiff
      would not be able to receive non-exempt breaks to eat lunch. Albert informed the
      Plaintiff that she would receive lunch breaks only when his "ideal revenue targets" were
      met.

16.   In September or October of 2016, in response to the Plaintiff hiring a student worker,
      Albert informed the Plaintiff that he was surprised that the Plaintiff hired a male student
      worker because Albert identified the jobs and tasks of the Plaintiff's role as "female
      responsibilities." This remark offended and alarmed the Plaintiff.

17.   In September or October of 2016, Albert tasked the Plaintiff with removing the personal
      effects of her predecessor. In the process of the Plaintiff's removal of such effects,
      Albert removed and read a personal document of the Plaintiff's predecessor. Upon
      observing in the document that the Plaintiff's predecessor's children were enrolled in the
      Dorchester School District, Albert remarked that he did not know if Dorchester School
      District qualified as an "actual" school district. This remark offended and alarmed the
      Plaintiff, as she had only recently met Albert and begun employment under him. This
      remark also offended and alarmed the Plaintiff, as this remark reflected racial and socio-
      economic animus of Albert toward students, particularly students of color.

18.　In November 2016, the Plaintiff approached Albert to address concerns about her work schedule, which were having negative effects on her physical and mental health, for which the Plaintiff received medical treatment. The Plaintiff asked Albert if adjustments could be made in her work schedule. Albert responded that no adjustments could be made and also responded: "You [the Plaintiff] should stop failing." Albert informed the Plaintiff that her concern about her work schedule was indicative of a poor attitude toward her work. Albert informed the Plaintiff that his method of personnel training was similar to psychological "conditioning."

19.　In January 2017, Albert informed the Plaintiff in his office that a program, which was then run by her, had "never seen such low numbers" and that any poor results came as a direct result of the Plaintiff's inadequate performance.

20.　In March 2017, in a closed-door meeting in Gribbons' office, Gribbons reprimanded the Plaintiff for alleged work-related failings, slammed his desk, and informed the Plaintiff that she could not leave his office until she agreed to "continue the conversation" at a later date.

21.　In another meeting, following the Plaintiff's continued concern with her work schedule, Albert informed the Plaintiff that he was considering increasing her work schedule and hours. Albert also informed the Plaintiff that other employees in her office were successful while working in excess of their 9 AM to 5 PM job.

22.　In the fall of 2017, the Plaintiff asked Albert if her job title could be changed to reflect her workload. Albert agreed that this would be appropriate and promised to speak with Human Resources about the matter. The Plaintiff did not hear back from Albert or Human Resources.

23. In the fall of 2017, the Plaintiff began experiencing severe pain in her pelvic area. The Plaintiff's health provider attributed the severe pain to the long hours of sitting required by her job.

24. On November 16, 2017, and then on January 18, 2018, the Plaintiff's health provider provided letters requesting that Employer make medical accommodations because of her medical condition.

25. On February 5, 2018, David Hatch ("Hatch") of Bentley University Human Resources denied the Plaintiff's health provider's request that she work from home two days a week. Instead, Hatch approved medical accommodations that only allowed the Plaintiff to work in areas of the Bentley campus other than her assigned office. These areas provided partial relief to the Plaintiff's severe pain, and these accommodations did not inhibit the Plaintiff's ability to complete all job-related tasks.

26. After the Plaintiff's attempts to address issues related to her work schedule with Albert and Gribbons, she reported the issues to Hatch. Hatch then informed the Plaintiff to "bring it up" to Albert and Gribbons. The Plaintiff did not feel comfortable further addressing these issues with Albert and Gribbons after they had treated such issues with disdain. The Plaintiff informed Hatch of these concerns, to which Hatch did not respond.

27. The Plaintiff repeatedly brought issues related to her work schedule and issues of race, gender, and ethnicity discrimination to Hatch. Hatch did not address any of these issues

28. Shortly after the Plaintiff received her approved medical accommodations from Hatch, she reported the pattern of hostile and harassing behavior exhibited toward her from Gribbons and Albert to Human Resources. The Plaintiff informed Hatch of concerns that she was being targeted because of her race, gender, and ethnicity.

29.     Shortly after the Plaintiff reported the behavior of Gribbons and Albert to Human
        Resources, Gribbons and Albert began to write-up the Plaintiff for allegedly not
        satisfying her job requirements and for not being at her desk, even though she was
        excused from being at her desk at times because of medical accommodations.

30.     In March 2018, the Plaintiff requested to be transferred to another job with the
        Defendant and offered to accept a reduction in pay. Hatch denied the Plaintiff's request
        and informed her that she could be fired for "insubordination."

31.     As a result of the stress caused by the continued harassment by Gribbons and Albert, and
        Bentley's refusal to remedy the situation, the Plaintiff was forced to provide her two
        weeks' notice. Her last day of employment was July 20, 2019.

32.     Shortly after her last day of employment on July 20, 2019, the Plaintiff requested and
        received her personnel file from Hatch. Substantial portions of the personnel file that she
        received were missing. For instance, missing were copies of her exit interview and
        documentation of the Plaintiff's repeated complaints to Human Resources.

33.     Due to the Plaintiff's work experience with the Defendant, she suffered and continues to
        suffer from mental and physical ailments that impact her daily well-being and ability to
        seek other employment

34.     Following the Plaintiff's employment with the defendant, Albert has repeatedly
        disparaged the Plaintiff personally and professionally to graduate students, faculty, and
        staff at Bentley.

## VII. CLAIMS FOR RELIEF

### FIRST CLAIM: UNLAWFUL DISCRIMINATION AND CONSTRUCTIVE DISCHARGE BASED UPON RETALIATION IN VIOLATION OF FEDERAL AND STATE LAWS

35.    Paragraphs 1 through 34 of this Complaint are repeated and incorporated as though fully
       set forth herein.

36.    The conduct of Bentley constitutes retaliation against the Plaintiff because she engaged in
       activities protected by Title VII and Mass. Gen. Laws ch. 151B. Such protected activities
       engaged in by the Plaintiff include, but are not limited to, opposition to conduct the
       Plaintiff believed in good faith was discrimination on the basis race, gender, and
       ethnicity. The stated reasons for the conduct of Bentley were not the true reasons, but
       instead were pretext to hide Bentley's discriminatory animus.

**SECOND CLAIM: VIOLATION OF FAMILY MEDICAL LEAVE ACT – 29 U.S.C.  §
2614(a) and 29 U.S.C § 2615(a)(1)**

37.    Paragraphs 1 through 36 of this Complaint are repeated and incorporated as though fully
       set forth herein.

38.    Bentley was at all relevant times and is an "employer" as defined in 29 U.S.C. §2611(4),
       as Bentley employed more than fifty employees within a seventy-five mile radius for
       each working day during each of twenty or more calendar work weeks in the current and
       preceding calendar years.

39.    Plaintiff was at all relevant times an "eligible employee" as defined in the 29 U.S.C.
       §2611(2)l; had not exhausted her allotment of twelve weeks of FMLA leave during a
       twelve-month period; and had worked the requisite twelve months prior to her FMLA
       requests.

40.    Plaintiff had a serious health condition under 29 U.S.C. §2611(11) and 29 C.F.R.
       §825.113.

41.    Plaintiff was entitled under the FMLA up to twelve (12) work-weeks of leave for  her
       serious health condition, which could be used intermittently or on a reduced leave basis

and which leave was medically necessary, under 29 U.S.C. §§ 2612(a)(1)(C) and (D) and §2612(b)(1).

42.     The Employer's threats, disciplinary actions, and constructive termination by forcing her to resign, interfered with her FMLA rights and constitutes violations of the FMLA including, but not limited to, violations of 29 U.S.C. § 2615(a)(1) and its implementing regulations 29 C.F.R. §§ 825.220(a) and (b).

## THIRD CLAIM: VIOLATION OF FAMILY MEDICAL LEAVE ACT – 29 U.S.C § 2615(a)(2)

43.     Paragraphs 1 through 42 of this Complaint are repeated and incorporated as though fully set forth herein.

44.     The Employer's disciplinary actions and constructive termination were willful and were in retaliation of her request for intermittent FMLA leave in violation of 29 U.S.C. § 2615(a)(2) and its implementing regulations.

## FOURTH CLAIM: VIOLATION OF THE AMERICAN WITH DISABILITIES ACT (ADA) – DISABILITY DISCRIMINATION, 42 U.S.C. §§12101-12213

45.     Paragraphs 1 through 44 of this Complaint are repeated and incorporated as though fully set forth herein.

46.     Defendant was at all relevant times and is an "employer" as defined by 42 U.S.C. §12101 *et seq.*

47.     Plaintiff was at all relevant times a qualified individual and a qualified handicapped individual as defined in 42 U.S.C. §12101 *et seq* and/or Defendant, through its agents, servants, and employees, perceived Plaintiff to have a physical impairment as defined in 42 U.S.C. §12101 *et seq.*

48.   Plaintiff could perform and is able to perform the essential functions of her job as required by the law.

49.   Defendant's conduct, through its agents, servants, and employees, violated the Plaintiff's rights under 42 U.S.C. §12101 *et seq.*

50.   Defendant knew of the conduct of its agents, servants, and employees in creating a hostile work environment for Plaintiff, yet Defendant took no meaningful or effective action to prevent its agents, servants, and/or employees' behavior.

51.   As a direct and proximate result of Defendant's violations of the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq.*, the Plaintiff was forced to resign, suffered economic losses, past and future, and suffered emotional distress.

### FIFTH CLAIM: VIOLATION OF THE AMERICANS WITH DISABILITIES AMENDMENTS ACT (ADAAA) – DISABILITY DISCRIMINATION, DISABILITY DISCRIMINATION, 42 U.S.C. §§12101-12213

52.   Paragraphs 1 through 51 of this Complaint are repeated and incorporated as though fully set forth herein.

53.   By virtue of the ADAAA, and changes in definition of the term "disability", Plaintiff is a "qualified individual with a disability" as the term is used in the ADAAA.

54.   Defendant was at all relevant times and is an "employer" as defined by G.L. c. 151B, § 1 *et seq.*

55.   Plaintiff was at all relevant times a qualified individual and a qualified handicapped individual as defined in 42 U.S.C. §12101 *et seq* and/or Defendant, through its agents, servants, and employees, perceived Plaintiff to have a physical impairment as defined in 42 U.S.C. §12101 *et seq.*

56. Plaintiff could perform and is able to perform the essential functions of her job as required by the law.

57. Defendant's conduct, through its agents, servants, and employees, violated the Plaintiff's rights under 42 U.S.C. §12101 *et seq.*

58. Defendant knew of the conduct of its agents, servants, and employees in creating a hostile work environment for Plaintiff, yet Defendant took no meaningful or effective action to prevent its agents, servants, and/or employees' behavior.

59. As a direct and proximate result of Defendant's violations of the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq.*, the Plaintiff was forced to resign, suffered economic losses, past and future, and suffered emotional distress.

## SIXTH CLAIM: VIOLATION OF THE MASSACHUSETTS FAIR EMPLOYMENT PRACTICES ACT (MFEPA) – DISABILITY DISCRIMINATION, M.G.L. c. 151B §§ 1-10

60. Paragraphs 1 through 59 of this Complaint are repeated and incorporated as though fully set forth herein.

61. Defendant was at all relevant times and is an "employer" as defined by G.L. c. 151B, § 1 *et seq.*

62. Plaintiff was at all relevant times qualified for her job within the meaning G.L. c. 151B, § 1(16).

63. Plaintiff was at all relevant times a qualified handicapped individual as defined in G.L. c. 151B, § 1 *et seq.* and/or Bentley, through its agents, servants, and employees perceived Plaintiff to have a physical impairment as defined in G.L. c. 151B, § 1 *et seq.*

64. Defendant failed and refused to reasonably accommodate the Plaintiff's actual or perceived handicaps.

65. Defendant failed to promptly remedy and deter discrimination.

66. Defendant perceived the Plaintiff to be a handicapped individual.

67. Plaintiff was constructively terminated from her employment with the Defendant because of her status and/or her perceived status as a handicapped person in violation of G.L. c. 151B, § 4(4A, 5, and 16).

68. The Defendant replaced the Plaintiff with other less qualified employees who were not handicapped or perceived to be handicapped

69. The Defendant discriminated against the Plaintiff on account of her handicap or perceived handicap in violation of G.L. c. 151B, § 4(16).

70. Defendant unlawfully discriminated against the Plaintiff and/or aided and abetted discrimination in violation of G.L. c. 151B, § 4(5).

71. Defendant was aware that it is illegal to terminate a qualified handicapped employee on the basis of her handicap and/or her perceived handicap.

72. Defendant knew or should have known that they were discriminating against the Plaintiff on the basis of her handicap or perceived handicap, in violation of law.

73. Defendant's conduct in violation of law, as more particularly set forth above, was willful or, in the alternative, carried out in reckless disregard for the Plaintiff's legal rights and the Defendant's corresponding duties.

74. As a result of the Defendant's discriminatory conduct, the Plaintiff has suffered lost past and future wages and benefits and has suffered emotional and physical pain and suffering for which she seeks compensation.

75. Defendant is liable to the Plaintiff for discriminating against her on account of her handicap or her perceived handicap, in violation of G.L. c. 151B, § 4.

**SEVENTH CLAIM: VIOLATION OF THE MASSACHUSETTS FAIR EMPLOYMENT PRACTICES ACT (MFEPA) – RETALIATION, M.G.L. c. 151B §§ 1-10**

76. Paragraphs 1 through 75 of this Complaint are repeated and incorporated as though fully set forth herein.

77. By its conduct, as more particularly described above, the Defendant violated G.L. c. 151B, § 4(4) by discharging, expelling, or otherwise discriminating against the Plaintiff because she requested accommodation.

78. By its conduct, as more particularly described above, the Defendant violated G.L. c. 151B, § 4(4)(A) by coercing, intimidating, threatening, or interfering with the Plaintiff in exercise or enjoyment of rights protected by G.L. c. 151B.

79. Defendant knew or should have known that they were retaliating against the Plaintiff on the basis of her request for accommodation.

80. Defendant's conduct in violation of law, as more particularly set forth above, was willful or, in the alternative, carried out in reckless disregard for the Plaintiff's rights and the Defendant's corresponding duties.

81. Defendant's conduct, as more particularly described above, caused the Plaintiff substantial damage, including, but not limited to, loss of past and future wages, benefits, reputation, and earning capacity, emotional distress, physical harm, and attorney's fees and costs.

## VIII. PRAYERS FOR RELIEF

**WHEREFORE, the Plaintiff requests that this Court:**

    a. Reverse the decisions of the MCAD and the EEOC;

    b. Order the Defendant to reinstate Ms. Stratton to her job or to an equivalent position;

    c. Award the Plaintiff money damages pursuant to 29 U.S.C. § 2617, amounting to twice the back wages owed her as a result of the Defendant's actions and

failures to act; in addition to the value of her lost employment benefits and any other lost compensation (plus interest on the total);

d.  Award the Plaintiff damages including but not limited to: compensatory damages, damages for emotional distress, pain and suffering, damages for humiliation, consequential damages, back pay, front pay, lost employment benefits, lost opportunity, and punitive damages;

e.  Grant the costs of maintaining her action, including costs and reasonable attorneys' fees and pre-judgment interest; and

f.  Grant such other and further relief as the Court deems just and proper.


PLAINTIFF REQUESTS A JURY ON ALL CLAIMS SO TRIABLE


Respectfully submitted,


LUPE STRATTON

By her attorney,


/s/ Naomi M. Mann
BB0 # 600944
Boston University
Civil Litigation & Justice Program
197 Friend St.
Boston, MA 02114
 (617) 371-1234

nmann@gbls.org


Dated:  July 9, 2019